## THE PEOPLE *against* COOK.

### *Office and officer; elections; bill of exceptions.*

ACTION to test the title of the defendant to the office of state treasurer.

The title to an elective office is derived from the people, and the certificate of the board of canvassers is merely the evidence of such title.

The issue joined in this case had reference to the number of votes received by the respective candidates, and not merely as to which had the certificate.

When there is no dispute about the facts, it is not error to prevent counsel from addressing the jury, there being no question of damages in the case.

A bill of exceptions does not lie to a decision, when the matter rests in the discretion of the judge; nor to a mere commentary on the evidence.

The motives of inspectors of election cannot be in-

quired into if every legal vote offered is received, and every illegal one is excluded.

At the election in 1851, the defendant and Benjamin Welch, junior, were candidates for the office of treasurer, and divers ballots were returned to the state canvassers, some having the name of Benjamin C. Welch, junior, and others the name of Benjamin Welch, for that office. They were not allowed by the state canvassers to Benjamin Welch, junior.

*Held*, by Willard, J., that the state canvassers decided correctly in rejecting them.

*Held*, by the court, that evidence tending to show that those votes were intended for Benjamin Welch, junior, was properly received; and it being, *prima .facie*, sufficient to establish the fact of such intention, and not attempted to be contradicted or explained, the judge committed no error in refusing to submit it as an open question to the jury, and in directing a verdict in conformity to the evidence.

On the trial of this issue it was proper to go behind the return, and to show the *intention* of the voters who deposited the defective ballots.

Where the inspectors and clerks of election took their oaths of office on a book other than the gospels, they believing it to contain the gospels, held that they were legally sworn into office.

Oaths administered to challenged voters, in like manner, were held legally administered, and the voters liable to indictment for perjury if they swore falsely.

Where the inspectors and clerks omitted to take any oath of office, or were sworn before an improper officer, it was held that they were officers *de facto*, and their acts were valid so far as the public was concerned.

It seems that the wilful neglect of inspectors or clerks to take the oath required by law, before entering upon

their duties, would subject them to indictment for a misdemeanor.

The county canvassers have no right to reject the return of the inspectors from an election district, fair and regular on its face, and presented to the proper officer in due time.

If the irregularities at the polls are such that the true state of the vote cannot be ascertained (as in the case of the destruction of the ballot-boxes by a mob), they will excuse the inspectors from making any return to the county board.

Neither the county nor state canvassers have authority to examine witnesses, or to decide otherwise than upon the returns made to them. Their duty is mainly ministerial, but they have a right to allow to a candidate ballots on which his Christian name is expressed by well-known abbreviations.

An appointment of inspectors to fill a vacancy, under § 22 of the election act of 1842, must be signed by the supervisor, town clerk, and justices; and if signed by one justice only, it confers a merely colorable authority, and does not displace the elected inspectors, in case they subsequently appear.

Inspectors so appointed are officers *de facto*, and their acts are valid. An officer *de facto* is one who comes into office by color of a legal appointment or election.

An omission to appoint clerks of the election will not invalidate the return of the district, nor will the occasional interference of more than three inspectors in making the canvass.

A failure to comply with those requisites of the statute which are directory is an irregularity; but it will not vitiate the election, unless it be such that it deprives a legal voter of his vote, or admits an unqualified person to vote, or brings the result of the election into such uncertainty that a true canvass cannot be made.

The closing of the outer door of the election room at sunset, with the view of excluding other persons from entering, and receiving the votes, after sunset, of the voters in the room when the door was closed, will not, *of itself*, vitiate the election for the district, it not appearing that legal voters were excluded or illegal votes received.

A judgment will not be reversed, on bill of exceptions, for an irregularity which it is manifest could have had no tendency to injure the party excepting.

(S. C., 14 Barb. 259 ; 8 N. Y. 67.)